**In the Interest of Shawn Jerome HERD, a minor.**

No. 8677.

Court of Civil Appeals of Texas, Amarillo.

May 24, 1976.

Rehearing Denied June 21, 1976.

C. J. Humphrey, Amarillo, for appellants.

Oth Miller, Amarillo, for appellees.

REYNOLDS, Justice.

Denying appellants' petition for adoption of the minor child, the trial court ordered the child removed from the home of appellants, who were temporary managing conservators, appointed an agency the managing conservator, and replaced the child with appellants who were given full and exclusive rights as possessory conservators. Because the judgment provisions expressly or by necessary implication finding that it is in the best interest of the child to remove him from and to replace him in appellants' home are contradictory, the judgment is reversed and, in the interest of justice, the entire cause is remanded.

Shawn Jerome Herd, a male child not yet five years of age, is the subject of this continuing litigation. His father died in 1971 and, at the age of two months, Shawn was placed in the Borger, Texas, home of his maternal grandparents, appellants Ray Calvin Adams and Florence Pearl Adams. In late 1972, a representative of the Hutchinson County Child Welfare Unit of the State Department of Public Welfare initiated proceedings to have Shawn declared dependent and neglected. In January of 1973, the child's paternal grandparents, J. D. Herd and June Herd, intervened, alleged the child was dependent and neglected, and prayed for custody. The Adams filed in the cause in November of 1974 their petition to terminate the parent-child relationship and to adopt Shawn. His natural mother, Doneta Marie Herd, joined in the petition and executed an affidavit asking that her relationship with her child be terminated, designating the Adams to serve as managing conservators if her parental rights were terminated, and agreeing that the petition for termination may be joined with a petition for adoption.

Following a hearing, the trial court adjudged Shawn a dependent child, terminated the parental rights of his natural mother, denied the Adams' petition for adoption, appointed as managing conservator the su-

pervisor of the Hutchinson County Child Welfare Unit of the State Department of Public Welfare, who took physical possession of Shawn, and appointed all the grandparents possessory conservators with reasonable visitation privileges under the regulation and control of the managing conservator. On appeal by the Adams, the Waco Court of Civil Appeals, receiving the cause on a transfer to equalize the dockets, reversed the judgment and remanded the cause. This action resulted from determinations that the record conclusively showed that Shawn was not a dependent and neglected child on the date of the hearing or at any time during the previous two years, and that both the denial of the adoption by the Adams and the removal of Shawn from their home was so against the great weight and preponderance of the evidence as to be wrong and manifestly unjust. *Adams v. Herd,* 526 S.W.2d 295 (Tex.Civ.App.—Waco 1975, no writ).

After remand, the Herds moved for appointment as temporary managing conservators, but the court appointed the welfare supervisor to serve in that capacity until a hearing could be had. The Adams withdrew their stipulation that Shawn was dependent and neglected and moved for dismissal of that action. On hearing the matters, the court dismissed the dependent and neglected action, appointed as temporary managing conservators the Adams who took Shawn back into their home, and appointed the Herds temporary possessory conservators. The court set a hearing for the Adams' application for adoption. The Herds then filed in the cause a petition affecting the parent-child relationship, but process not having been served on the day of the adoption hearing, the court granted the Adams' motion to sever that action.

At the adoption hearing, the Herds appeared, testified in opposition to the Adams' application for adoption and indicated their desire for custody of Shawn. Witnesses not previously testifying were also heard by the trial court and the evidence bearing on the welfare of Shawn, recorded on 454 pages

with twelve exhibits, was more comprehensive than that presented to the court on the prior hearing.

Having heard the evidence, the court found that the adoption "is not for the best interest of" Shawn and denied the petition for adoption. Then the court, reciting and exercising the authority stated in V.T.C.A., Family Code § 16.10, found that the removal of Shawn from the Adams' home "is in the child's best interest" and ordered that Shawn "be removed from the home of Ray C. Adams and Pearl Adams," appointed the supervisor in Hutchinson County of the Child Welfare Unit of the State Department of Public Welfare the managing conservator of Shawn, "subject to the rights, privileges, duties and powers of the possessory conservators as hereinafter set forth in this judgment," and then ordered, subject to the Herds' possessory conservatorship every other week-end and visitation at times agreeable to the Adams, that

> . . . Ray C. Adams and Pearl Adams, the petitioners for adoption, be granted all of the rights, privileges, duties and powers of possessory conservators as set forth in Paragraph 14.04 of the Family Code of Texas, and that the managing conservator appointed above deliver said child, Shawn Jerome Herd, to the said Ray C. Adams and Pearl Adams. It is the ORDER of this Court that the said Ray C. Adams and Pearl Adams shall have the full and exclusive right as possessory conservators of said minor child,
> . . .

■ Appealing, the Adams present twenty-three points of error, the seventh of which is that the judgment is so contradictory that it clearly reflects an abuse of discretion in the application of "the best interest of the child" standard. We agree and sustain the point.

■ In determining questions of adoption, managing and possessory conservatorship, and support of and access to a child involved in domestic relations, the pri-

mary consideration is the best interest of the child. V.T.C.A., Family Code § 16.08, § 14.07.* To protect the best interest of the child where there is no jury, broad discretion is entrusted to the trial court, *Taylor v. Meek,* 154 Tex. 305, 276 S.W.2d 787, 790 (1955), who has the opportunity to observe the appearance and demeanor of the witnesses, *Valentine v. Valentine,* 203 S.W.2d 693, 696 (Tex.Civ.App.—Amarillo 1947, no writ), to evaluate the personalities of the contending claimants, to weigh the credibility of the testimony, to assess the physical, mental, moral and emotional needs of the child, *Mumma v. Aguirre,* 364 S.W.2d 220, 223 (Tex.1963), and to experience the forces and influences that cannot be discerned by merely reading the record. *Lanford v. Carruth,* 186 S.W.2d 368, 369 (Tex.Civ.App.— Amarillo 1945, no writ). Thus positioned, the trial court is better able to analyze all of the circumstances and to arrive at the judgment which, in its discretionary opinion, will protect the best interest of the child. Once made, that judgment will not be disturbed unless it appears from the record as a whole that there was an abuse of the discretion entrusted to the trial court. *Mumma v. Aguirre, supra.*

Here, the self-contradictory removal-replacing dichotomy in the judgment reflects an abuse of discretion in applying the best-interest standard mandated by § 16.08 and § 14.07. After finding that Shawn's best interest required that the adoption be denied and that he be removed from the Adams' home and so decreeing, which the court was authorized to do by §§ 16.08 and 16.10, the court, as equally bound by the § 14.07 requirement that any appointment of a managing and possessory conservator be in the best interest of the child, then ordered the appointed managing conservator to deliver the physical possession of Shawn to the Adams who, as possessory conservators and subject only to the Herds' right of limited possession, were given the full and exclusive right of his possession. The net effect of the judgment is to physi-

---

\* Sections subsequently cited are those sections of the Texas Family Code.

cally, and for all practical purposes to permanently, place Shawn in the Adams' home from which the court had just ordered that he be removed. In short, the court found that what was not in Shawn's best interest was in his best interest and rendered judgment accordingly. The resulting judgment contains contradictory provisions, each of which purports to be, but both of which cannot be, in the best interest of the child, and constitutes an abuse of discretion in determining what is in the best interest of the child.

We are not to be understood as holding that the trial court can never appoint one as managing conservator and appoint another as possessory conservator with the right of full physical possession of the child. What we do hold is simply that, under this record, the removal of the child from the Adams' home and the instant physical replacement of him permanently in the same home cannot both be in his best interest. Logically, the evidence must preponderate in favor of either the removal from or the retention in the home.

From the viewpoint that, independent of the contradictory provisions of its judgment, the trial court had denied their application for adoption and, alternatively, their plea for appointment as managing conservators, the Adams have challenged these determinations on grounds of legal and factual sufficiency of the evidence. But, except for the legal sufficiency points mentioned hereafter, our view is that these matters are so inextricably interwoven and interrelated with the ultimate best-interest-of-the-child issue which has not been, and is yet to be, decided by the trial court that any attempt by us to weigh all of the evidence at this stage would be speculative of the decision the trial court must first make.

■ As a necessary corollary to the broad discretion entrusted to the trial court to protect the best interest of the child, the law commits the trial court to initially determine what course is in the best interest of the child. It matters not what the appellate court would have done under the circumstances; the appellate court can only determine after the trial court has acted whether it abused its entrusted discretion. So, in this case, the trial court must first make a definitive determination. If, in the exercise of its discretion, the trial court believes the evidence that it would be in Shawn's best interest to deny the adoption and to remove him from the Adams' home, then under this record it could not be in Shawn's best interest to replace him permanently in the same home; or, conversely, if the court believes the evidence that Shawn's best interest requires his physical placement permanently in the Adams' home, it could not be in Shawn's best interest to deny the adoption and remove him from that home. Until the trial court has rendered judgment clearly disposing of all the issues, any expression we might make on the weight of the evidence would be predicated on contingent and future decisions to be made by the trial court.

■ The Adams say that there is no evidence to support the findings upon which the court predicated the denial of the application for adoption, the removal of Shawn from their home, and the appointment of the welfare supervisor as managing conservator, and that the court erred as a matter of law in denying their application for adoption, in ordering the removal of Shawn from their home, and in failing to appoint them managing conservators. These are issues upon which the Adams had the burden to persuade the trial court that, in the best interest of Shawn, their petition for adoption should be granted or, alternatively, that they should be appointed managing conservators. Although the judgment expresses or implies findings opposite to the vital facts necessary to be established for the Adams to prevail, the technical effect is that the trial court was not persuaded that the Adams discharged their burden. It, therefore, avails them nothing to say that there is no evidence to support the failure of the trial court to find in their favor, for the failure to find a vital fact necessary to

**954**

be established for recovery is not required to be supported by affirmative evidence. *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973); Hatchell and Calvert, *Some Problems of Supreme Court Review,* 6 St. Mary's L.J. 303, 323 (1974). On the other hand, within the evidence heard by the trial court there is some admissible, probative evidence in support of the express and implied findings. We cannot, therefore, hold as a matter of law that there is no evidence in support of the findings, *Rourke v. Garza,* 530 S.W.2d 794, 799 (Tex.1975), or that the evidence is so clear and unequivocal that it disproves the adverse findings and conclusively establishes that it is in Shawn's best interest to grant the adoption or, alternatively, to appoint the Adams the managing conservators. *Wisdom v. Smith,* 146 Tex. 420, 209 S.W.2d 164, 166 (1948); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361, 364 (1960). Consequently, the no evidence points and the established-as-a-matter-of-law points are overruled.

. The Adams have presented other points, but we do not reach them. They are cast in the alternative role of requiring resolution only if the judgment is otherwise affirmed.

■ Because we may not substitute our judgment for that required of the trial court in the first instance, we are unable to render the judgment that the trial court should have rendered, and in the interest of justice, we remand the entire cause. *Scott v. Liebman,* 404 S.W.2d 288, 294 (Tex.1966). Additionally, the Herds have suggested and identified other evidence that should be brought to the attention of the trial court. *Cf. Jackson v. Ewton,* 411 S.W.2d 715, 719 (Tex.1967).

For the reasons stated, the judgment is reversed and the cause is remanded to the trial court.