In the Interest of Pamela Kates, A Child

Thomas KATES, Appellant,

v.

Nadine SMITH, Appellee.

No. 8499.

Court of Civil Appeals of Texas, Texarkana.

Oct. 4, 1977.

Thomas R. Newman, Texarkana, for appellant.

Nadine Smith, for appellee.

CORNELIUS, Justice.

Appellant filed suit in the District Court of Bowie County seeking the legitimation of Pamela Kates, an eight-year-old female, as his lawful child and to be appointed her managing conservator. The district court granted legitimation but refused appellant's other request and appointed instead the child's natural mother, appellee Nadine Smith, as her managing conservator.

The child was born when appellee and appellant were living together but were not married to each other. Appellant was married but was separated from his wife. Appellee had been married several times but was at that time divorced. Both parties conceded that appellant is the natural father. The child was in the joint custody of appellant and appellee from birth until their separation in January of 1970 and when they again lived together for some fifteen months in 1972 and 1973. At various times while the parties were separated the child resided with appellant in Georgia and Texas with appellee's knowledge and consent. At other times she resided with appellee with appellant's consent. At still other times appellant kept the child during the day and she stayed with her mother at night. Appellant became increasingly dissatisfied with the environment existing in appellee's home and the activities which occurred there, and finally, in 1976 he filed suit to have the child legitimated as his lawful child and asked to be awarded custody of her.

The direct and circumstantial evidence produced by appellant concerning appellee and her home environment disclosed a history of unwholesome companions, activities and circumstances which could only be detrimental to the child's welfare and raises

serious doubts as to the advisability of placing the child's custody with her. Appellee testified, however, that those activities and conditions existed only because she was unmarried at the time and was compelled to work nineteen hours a day, and that as she was now married and did not work she would be able to stay home and look after Pamela and her other children. Appellant lived alone. When he had custody of Pamela he left her with a babysitter during the day while he worked. As concerns the suitability of the living conditions in appellant's home, his witnesses testified that he took good care of Pamela, took her to church with him regularly, and that she was happy and well adjusted. To the contrary, appellee's evidence reflected seriously upon appellant's character and living habits and indicated that he was seeking custody of Pamela more because he was jealous of appellee's present husband than because of his concern for the child.

Appellant has assigned 8 points of error. They contend, among other things, that the decision to place Pamela's custody with appellee is against the overwhelming weight of the evidence, and that the court erred in relying upon a welfare department report which was ordered, made and considered without appellant's knowledge and after the close of evidence at the hearing on custody.

It is not necessary for us to pass upon the question of the weight of the evidence because a new trial must be ordered due to the circumstances surrounding the consideration of the welfare department report.

Appellant's petition was filed on July 12, 1976. On July 22nd the court held a hearing to determine temporary matters. After considerable evidence was heard, the court appointed appellant temporary managing conservator and set a hearing on the permanent appointment for August 10th. In its decree the court also ordered that Mr. Jimmy Jones, Bowie County Probation Officer, conduct an investigation into the background, home life and environment of Pamela and that he file a report with the court by August 6th. That report was filed on August 5th. It recommended that appellant be appointed permanent managing conservator. The hearing on permanent custody began on August 10th, and after a continuance it was reconvened and concluded on September 8th. Judgment, however, was not entered until November 12th. The formal judgment awarded custody to appellee, and among other things, recited that the court considered and based his judgment upon the pleadings, exhibits, oral testimony, the report of Mr. Jones and ". . . *a supplemental investigation ordered by the court from Bowie County Welfare Unit* . . . ." The supplemental report is in the transcript and shows on its face that it was made on October 4, 1976, approximately a month after the close of the hearing. Appellant states in his brief that he had no knowledge of the ordering or making of the investigation or the report until the formal judgment was signed and filed on November 12th. The statement is not challenged and will be accepted as true. The welfare department report is very lengthy and contains a long history of the conflicts between appellant and appellee over the child and other matters. It reflects adversely upon appellant's character, attitudes and motives in seeking the child's custody, and it indicates that appellant's allegations concerning unsuitable conditions prevailing in appellee's home were not well founded.

The provisions of the Texas Family Code make it mandatory that parties have the opportunity to examine and cross-examine any person making an investigation or report which is considered by the court in a suit affecting the parent-child relationship. Section 11.14 provides in part as follows:

"Sec. 11.14. Hearing

(a) Except as otherwise provided in this subtitle, *proceedings shall be as in civil cases generally.*

.    .    .    .    .

(c) The court may compel the attendance of witnesses . . . including a representative of the agency making

the social study, *who may be compelled to testify.*

.    .    .    .    .

(e) The rules of evidence apply as in other civil cases.

(f) When information contained in a report, study, or examination is before the court, *the person making the report,* study, or examination *is subject to both direct examination and cross-examination* as in civil cases generally. .   .   ." (Emphasis supplied.)

See also, *Magallon v. State,* 523 S.W.2d 477 (Tex.Civ.App. Houston—1st Dist. 1975, no writ). To deny a party the opportunity to examine or cross-examine the author of such a report deprives that party of a valuable right to deny, contradict or overcome by other evidence the matters contained in the report. Even if it can be said in such a case that the court's decision would have been the same without considering the report, the aggrieved party still has been deprived of information possibly valuable to him and has been denied the opportunity to properly present his case both in the trial court and in the appellate court. See Rule 434, Tex.R.Civ.P. It may be argued that, as the trial judge announced at the close of the hearing on September 8, that he intended to award appellee custody of the child, the supplemental report was superfluous and had no bearing on the court's decision. However, the court's written judgment specifically stated that the supplemental report was considered. A formal judgment, plain and unambiguous in its terms, speaks for itself and is not to be impeached by or interpreted in the light of prior statements or acts of the court. *Harrison v. Manvel Oil Co.,* 142 Tex. 669, 180 S.W.2d 909 (1944); 33 Tex.Jur.2d, Judgments, Sec. 83, p. 597. Furthermore, although the announcement indicated the court's thinking at the time, it appears that the conclusions expressed were not final, else the supplemental report would not have been subsequently ordered.

Without question, the trial judge treated both parties fairly and did not intend to prejudice appellant by ordering the supplemental report. Under the circumstances, however, a procedure mandated by the Family Code, which would have a direct bearing upon the question of the best interest of the child, has not been followed. For that reason the judgment must be reversed and the cause remanded for a new trial. It is so ORDERED.