John Howard HOPPER, Appellant,

v.

Mary Alice BRITTAIN and Richard A. Brittain, Appellees.

No. B2375.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Jan. 21, 1981.

Rehearing Denied March 18, 1981.

Sam R. Wilson, Susan Laughead, Wilson & Laughead, Houston, for appellant.

Ralph Shepherd, Houston, for appellees.

Before COULSON, MILLER and MURPHY, JJ.

MILLER, Justice.

This is an adoption case, the facts of which are somewhat complex. John Howard Hopper, appellant, (Hopper) and Mary Alice Brittain, appellee, (Brittain) were at one time married to each other. While married, Hopper and Brittain took into their custody a baby (John-John), seeking to adopt him. Before the adoption became final Hopper and Brittain were divorced and each remarried. Subsequently, both Hopper and Brittain, along with their new spouses, brought separate actions to adopt John-John. Both adoption petitions were denied and the court appointed Brittain the managing conservator and Hopper possessory conservator of the child. Thereafter the parties functioned as many divorced parents function, with regular visitation between Hopper and John-John.

Several years later Brittain and her new husband again sought to adopt John-John and this adoption was granted over Hopper's objection. After the adoption was final Brittain refused to allow Hopper to exercise the visitation rights established when he was appointed possessory conservator and Hopper thereafter filed a motion to enforce these rights. The judge denied the motion, holding that the granting of the adoption to Brittain and her husband terminated Hopper's possessory conservatorship and cut off any rights he may have had thereunder.

Hopper appeals from the granting of the adoption and from the holding that the adoption terminated his possessory conservatorship, asserting ten points of error. We affirm.

In points of error one, two and three Hopper asserts the trial court erred in granting the adoption because no evidence, or alternatively insufficient evidence was presented that the adoption would be in the best interest of the child, and also that Brittain failed to refute expert testimony presented on Hopper's behalf. We disagree.

In considering Hopper's "no evidence" points of error we must look only to that evidence which supports the trial court's decision and disregard all other evidence to the contrary. In reviewing Hopper's "insufficient evidence" points of error, we must consider and weigh all the evidence in the record to determine if the judgment was improper. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951) (per curiam); *Hall v. Villarreal Development Corp.*, 522 S.W.2d 195 (Tex.1975) (per curiam); *City of Ingleside v. Stewart*, 554

S.W.2d 939, 943 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

We find there is some evidence to support the judgment of the trial court granting the adoption and this evidence is clearly sufficient to uphold the decree of adoption.

In determining questions of adoption the primary consideration is the best interest of the child and where there is no jury broad discretion is entrusted to the trial court, *Taylor v. Meek*, 154 Tex. 305, 276 S.W.2d 787, 790 (1955), who has the opportunity to observe the appearance and demeanor of the witnesses, *Mumma v. Aguirre*, 364 S.W.2d 220 (Tex.1963), to evaluate the personality of the contending claimants, and to assess the needs of the child, *Valentine v. Valentine*, 203 S.W.2d 693, 696 (Tex.Civ.App.—Amarillo 1947, no writ). *See generally In re Herd*, 537 S.W.2d 950 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). Once made, the decision of the trial court will not be disturbed unless it appears from the record that there was an abuse of discretion. As a corollary to this broad discretion entrusted to the trial court it is clear that it matters not what we might have done under the circumstances had we heard the evidence; we are only allowed to determine, after the trial court has acted, whether there was an abuse of its entrusted discretion.

In the case at bar the evidence shows the adoptive father, Richard A. Brittain, lived with John-John for four years, provided support for him and cared for him when he was sick. In addition, the record indicates John-John was provided some religious training. It was also shown the adoptive father was gainfully employed. When asked if he treated him as his son, the adoptive father indicated he had always treated him that way. Mary Alice Brittain testified John-John had a very loving relationship with a new born baby of the Brittain marriage.

Applying the above standards, we find there is some evidence to support the judgment of the trial court granting the adoption and that this evidence is clearly

sufficient to uphold the decree of the adoption. Considering the broad discretion allowed the trial judge in a case such as this we are compelled to so hold despite our consideration of the well-presented expert testimony evidence to the contrary. We cannot substitute our judgment for that of the trial court, and the record does not, in our opinion, support a finding of an abuse of discretion. Points of error one, two and three are overruled.

In point of error four Hopper complains that the lower court wrongly considered the social study which Hopper contends was inadmissible as hearsay and not properly admitted in evidence.

The recent Texas Supreme Court case, *Green v. Remling*, 24 Tex.Sup.Ct.J. 81 (Nov. 19, 1980), is controlling as to this point of error. In *Green* the court held it was proper in an adoption case for the trial court to consider a social study report, even though the report was not formally introduced in evidence. The court noted that the Family Code clearly provides in section 11.12(c) for the social study, when complete, to be filed with the court and made a part of the record in the case. The social study is mandatory in adoption cases under Tex. Fam.Code Ann. § 16.031 (Vernon Supp. 1980–1981). Considering these statutory provisions the court concluded that the legislature intended for the trial judge to have full access to the contents of the social study.

We likewise hold the trial judge in the case at bar was free to consider the social study notwithstanding a portion of the report may contain hearsay evidence, and despite the fact it may never have been properly admitted in evidence. The trial judge was at liberty to consider the report and was able to use his discretion in determining the weight to be given to it. To deprive the court of this type of valuable information could be detrimental to the child's best interest. Point of error four is overruled.

In points of error five and six it is asserted the trial court erred in granting the adoption and thereby changing the con-

servatorship despite the appellees' failure to meet the required burden of proof.

Hopper argues because the adoption decree by implication ended his possessory conservatorship, the standards of section 14.08 of the Family Code should have been met. Section 14.08 provides a decree designating a conservator may be modified only if circumstances have materially and substantially changed since the conservatorship was established.

We hold the provisions of section 14.08 do not apply in the instant case because a modification of a decree establishing a conservator was not sought. Appellees brought suit for an *adoption*, not for a change in conservatorship. It is true the adoption did terminate Hopper's conservatorship by implication, *Ex parte Pepper*, 544 S.W.2d 836, 838–39 (Tex.Civ.App.—Amarillo 1976, writ dism'd), but we do not think this fact is controlling. No motion for modification of conservatorship was heard by the trial court, indeed a motion for termination of possessory conservatorship filed by Brittain was dismissed with prejudice. In our opinion since no modification was sought the standards of section 14.08 were not required to be met. Points of error five and six are therefore overruled.

In points of error seven through ten Hopper alleges the trial court erred in granting the adoption and in terminating his possessory conservatorship. He also alleges the court-appointed custody arrangement was, in view of his personal relationship with the child, tantamount to a parent-child relationship.

Section 11.01 of the Family Code defines a parent and a parent-child relationship:

(3) "Parent" means the mother, a man as to whom the child is legitimate, or an adoptive mother or father, but does not include a parent as to whom the parent-child relationship has been terminated.

(4) "Parent-child relationship" means the rights, privileges, duties, and powers existing between a parent and child as provided by Section 12.04 of this code.

Hopper does not come within the definition of parent as set out in 11.01(3) because John-John is not Hopper's legitimate natural son, nor was he ever declared John-John's adoptive father. This being so Hopper could not be involved in a parent-child relationship under the Family Code and thus no termination proceeding was required as alleged by Hopper. No authority was cited by Hopper, and we find none, that would allow us to find a parent-child relationship on the basis that love and affection flowed from one person to a child. We construe section 11.01 to mean that to have a parent-child relationship one party must be a "parent" as defined in section 11.01(3). If this requirement is not met no such relationship may exist no matter how much natural love and affection is shown to exist. Since a parent-child relationship did not exist between Hopper and John-John the standards appellant wishes us to apply in points of error seven through ten are not proper. These points of error are therefore overruled.